IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

DOCKET NO. 3:08-cv-00173-FDW

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> DENNIS INSURANCE GROUP, INC.; DENNIS & ASSOCIATES, INC.; EUGENE GARY DENNIS; SECURITY INSURANCE COMPANY OF HARTFORD; THE FIRE & CASUALTY INSURANCE COMPANY OF CONNECTICUT; THE CONNECTICUT INDEMNITY COMPANY; ARROWOOD INDEMNITY COMPANY; and THE ARTIS GROUP; <br><br> Defendants. | ORDER |

THIS MATTER comes now before the Court upon Plaintiff's Motion for Protective Order (Doc. No. 30) and Defendants' Motion to Compel (Doc. No. 32). Plaintiff's and Defendants' Motions are GRANTED IN PART and DENIED IN PART as detailed below.

This matter involves the interpretation of an insurance policy between Plaintiff and Defendants Dennis Insurance Group, Inc., Dennis & Associates, Inc., and Eugene Gary Dennis (the "Dennis Defendants"). Under North Carolina law, it is well established that the interpretation of an insurance policy is a question of law for the court to decide. See, e.g., Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518, 522 (N.C. 1970). A term in an insurance policy is considered to be either "clear and unambiguous," in which case "the court must enforce the contract

of insurance as it is written," or "ambiguous and reasonably susceptible to more than one interpretation," in which case "the policy must be construed in favor of coverage and against the insurer." North Carolina Farm Bureau Mutual Ins. Co. v. Mizell, 530 S.E.2d 93, 95 (N.C. App. 2000). In construing terms of insurance, the North Carolina Supreme Court has considered such things as "the *purpose* of the policy," otherwise described as "the *intent* of the policy" or "the insurance coverage *intended* by the parties when the policy was issued." Wachovia Bank, 172 S.E.2d at 522, 524 (emphasis added).

Plaintiff's contention that courts may never turn to extrinsic evidence in the construction of an insurance contract, even in the case of an ambiguous term, is incorrect. In Reliance Ins. Co. v. Lexington Ins. Co., 361 S.E.2d 403, 406 (N.C. App. 1987), the court, having held that a term was ambiguous, looked to Webster's Third New International Dictionary, a source clearly extrinsic to the contract, to determine the term's meaning. In Mizell, 530 S.E.2d at 95, the court looked to previous versions of an insurance policy, noting:

> [P]laintiff changed its policy language in 1995 such that the policy now excludes coverage for injury or damage 'which may reasonably be expected to result from the intentional act....' This language now suggests the application of an objective standard as opposed to the subjective language involved in previous policy interpretations.

The court's willingness to consider language from previous policies, another extrinsic source, demonstrates that a court may consider extrinsic evidence in the construction of an ambiguous term.

The Court expresses no opinion on the clarity or ambiguity of the terms at issue here and is of the opinion that the matter must be further briefed and argued. However, the Court does believe that the majority of the discovery sought by Defendants would be beneficial in making this determination, and, if the relevant terms are ambiguous, would assist the Court in making the proper

construction. The Court makes the following findings as to the disputed items of discovery:

*Defendants' First Set of Interrogatories:*

- Interrogatories 5-7, 9 are allowed.

- Interrogatory 8 is overly broad and unduly burdensome. A less expansive interrogatory, for example one that requested similar information for the last two years, would be more appropriate. This period should be sufficient for an understanding of Plaintiff's "historical interpretation" of the relevant terms. (Defs.' Mem. at 10, Doc. No. 33.)

*Defendants' First Request for Production*

- Request 3 os overly broad and unduly burdensome for the reasons stated above.

- Request 5 is allowed.

- Request 7 is protected by the attorney-client privilege and is not allowed. Materials prepared by Plaintiff in preparation for the underlying arbitration are akin to materials created in preparation for litigation and are, therefore, not discoverable.

- Requests 8-9 and 11-15 are allowed.

- Request 16 is overly broad and unduly burdensome for the reasons stated above.

- Request 17 is allowed to the extent that the materials are not protected by the attorney-client privilege or the work-product doctrine.

*Defendants' Second Set of Interrogatories:*

- Interrogatories 12 and 14 are allowed.

*Defendants' Second Request for Production*

- Request 21 is protected by the work-product doctrine and is not allowed.

*Oral Deposition of Alan Yuter*

- Alan Yuter, as Plaintiff's counsel both here and in the underlying arbitration, is certain to have information protected by both the attorney-client privilege and the work-product doctrine. Those questions seeking privileged information are not allowed. However, Defendants may ask questions protected by the work-product doctrine if they can demonstrate a substantial need for the information and undue hardship in obtaining it from another source. Should Plaintiff provide a 30(b)(6) witness capable of testifying regarding the factual basis for its alleged decision not to endorse the Consent Judgment, the deposition of Alan Yuter would seem unnecessary. Plaintiff's legal basis for its decisions regarding litigation are not discoverable.

Accordingly, Plaintiff's and Defendants' Motions are GRANTED IN PART and DENIED IN PART as detailed herein.

IT IS SO ORDERED.                    Signed: January 12, 2009

Frank D. Whitney
United States District Judge